FARMER, J.,
dissenting.
The key question in this case is whether the trial judge properly barred defendant from asking the state’s DNA population frequency expert on cross-examination whether he could exclude the defendant’s nephew as the father of the child. The question was relevant to a defense that the nephew had sexual relations with victim and was the father of the child born to the victim.[1] I think it was error to exclude this testimony, error which I cannot say is harmless.
Under Brim v. State, 695 So.2d 268 (Fla. 1997), the admission of DNA evidence involves two distinct steps: the first to show that the DNA does not exclude the defendant, and the second to show the probabilities that defendant supplied the DNA in question. The issue in this case concerns the second step, the population frequency statistics.
The state’s population frequency expert testified on direct examination that in his opinion the probability was 99.99 + % that defendant was the source of the DNA. He explained that his analysis determined a probability of paternity as against a randomly selected individual from defendant’s population base.[2] On cross-examination defense counsel asked the witness whether he could exclude the nephew[3] as the source. The state objected to the question. The trial judge told defendant he could not ask the question unless the witness had actually analyzed the nephew’s DNA.[4] Defense counsel proffered that the witness would answer that based on the studies he had already done he could not exclude the nephew as the source; that unless he actually analyzed the DNA of any specific member of defendant’s family he could not exclude him as the father; and that he had not done so. The trial court sustained the state’s objection.
The probative power of DNA evidence in a criminal trial is the equivalent of the 1,000 pound behemoth in the wrestling match. It outweighs all other challengers. Consequently I believe that judges have special obligations to insure that the behemoth has not been improperly unleashed. Thus the population frequency statistics *722 require careful analysis as to precisely what was being compared.
The probability testified by the witness was between the defendant on the one hand, and a randomly selected individual from the rest of the subject population on the other. The 99% probability given by the expert was that the DNA in question did not have its source in the rest of the population. In other words he did not attempt to quantify any probability between the defendant and the nephew— only between the defendant and the rest of the world.
Defendant’s question on cross-examination thus addressed a different population, so to speak. He wanted to know in essence whether the 99% probability applied to members of defendant’s family. For purposes of judging any prejudice in excluding the question, it is irrelevant that the probabilities are 99% that a randomly selected individual from the rest of defendant’s racial population can be excluded as the source. Defendant was entitled to cross-examine the population frequency expert to make the point that his probabilities were limited to sources outside the family.
I do not understand the logic of the trial judge in excluding the question and its answer. The fact that the nephew’s DNA has not been analyzed does not yield any possible conclusion that it is irrelevant to ask whether the expert’s existing analysis excluded the nephew as well. He did not ask the expert to state a probability that the nephew actually was the source. This latter question — not posed by defendant— would conceivably require analysis of the nephew’s DNA. But the only question asked, whether the 99% probability excluded the nephew, did not require such an analysis. It merely made clear that what appears to be all but conclusive — for so the average juror is likely to regard any authoritative 99.99 + % probability — is not at all decisive on the single individual who, because of the blood relationship, bears some common DNA characteristics.
I would reverse for a new trial.

. There was other evidence to the effect that the nephew shared the same home with the victim and defendant, that the nephew had the opportunity, that he had been found alone with the victim, that the victim would walk through the nephew's room on her way to the bath; that the victim's aunt thought that the nephew was the father of the child. The trial judge also excluded evidence that the victim had several years before told police that her mother's then live-in boyfriend had abused her when it was not true. I believe it was also error to exclude this latter testimony as well.

. He identified three population bases: Caucasian, African-American and Hispanic.

. The premise for the question is that the defendant and his nephew share some common DNA characteristics which the rest of the subject population do not have or have in very limited numbers.

. The nephew was killed after police investigated this case. There was testimony that when the victim became pregnant her older brother was visibly upset, got a gun and threatened to shoot the father. The trial judge also excluded evidence to the effect that the police suspected the older brother in the murder of the nephew. This evidence was admittedly on the margin of admissibility. When exculpatory evidence is doubtful, in my opinion it should be admitted.